In re Gaston Trust.

35 60
50 397

## In re Gaston Trust.

1. Trustees are bound to keep clear and accurate accounts, and in case doubts or obscurities arise from their failure to do so, they should be resolved against the trustees. If the accounts of a trustee become lost through his carelessness, he should be required to bear any injurious consequences arising from their loss.

2. Sureties stand bound for the defaults and fraud of the trustee, and have no right to any favor or immunity that would not be accorded to the·trustee.

On petition, order to show cause, and depositions.

*Mr. A. A. Clark,* for application.

*Mr. James J. Bergen, contra.*

VAN FLEET, V. C.

This is an application on behalf of the sureties of a trustee to open his account. His account has been stated by a master, and confirmed by the court,.after service of a rule *nisi.* The

In re Gaston Trust.

reason the sureties desire to have the account opened is, that allowance may be made to the trustee of a credit which the master disallowed. In the account presented by the trustee he claimed two credits in this indefinite form: .

"For cash paid William K. Gaston...........................................$1,175 00
"Cash advanced to William K. Gaston..................................... 550 00"

The trustee was required to prove both. The master, after hearing his proofs, allowed the last and rejected the first.

The action of the master, on the proofs presented to him, is conceded to have been correct. The trustee then testified that there was a time when his account showed a balance against his *cestui que trust* of $1,175. In his subsequent examination, under the order to show cause, he fixed the time when this balance was struck as some time during the year 1867. In further testifying before the master, he said, in speaking of the $1,175:

" This amount may have been subsequently reduced by dividends received, which I retained to pay me what he owed me, so that subsequently he was only overpaid the $550, which I have charged as a subsequent item of my account; if I had my book I could explain it better; I do not claim that the $1,175 was due me at the time when I paid him the last money, which I personally paid; I think the account balanced except so far as the $550 was concerned; this item of $550 was the balance due me at the time I made the last advance to my *cestui que trust* on the dividends, and at the time my sureties took the collection of the dividends into their hands."

His sureties assumed the collection of the dividends in January, 1869.

This evidence of the trustee presented a plain statement of facts which was easily comprehended, and left the master but one course to pursue. If he believed the trustee's statements, he was bound to give him credit for the item of $550, and disallow the other. He clearly admitted that the $1,175 had been paid, and showed how it had been paid, namely, by the retention of dividends which he had collected for his *cestui que trust*. But the trustee now says, in his evidence taken under the order to

show cause, that he has been entirely misunderstood, and made to say what he did not mean. He says what he meant to say, and what he thinks he did say, was, not that he had re-imbursed himself for the $1,175 by retaining dividends, but by charging himself with the market value of the privilege which accrued to the trust in 1866, to subscribe for fifty shares of new stock at par, to be issued by the Camden and Amboy Railroad and Delaware and Raritan Canal Companies.

To explain : The trustee was appointed May 16th, 1866. At that time the trust property consisted of one hundred shares of the stock of the joint companies, a farm, and some personal property. The trustee, by the order of his appointment, was directed to sell the farm and personal property, and purchase with the proceeds one hundred additional shares of the stock of the joint companies, and if any residue remained after such purchase and paying necessary expenses, to invest it in stock of the Central Railroad Company of New Jersey. The farm and personal property were sold very shortly after his appointment, and he received their proceeds in ample time to have made the purchase of the one hundred additional shares of stock prior to July 1st, 1866, but neglected to do so. In July, 1866, the joint companies gave their stockholders the privilege of subscribing for one share of new stock, at par, for each four shares then held. Had the trustee purchased the one hundred shares, as directed by the court, within the time that he ought to have made the purchase, the trust would have had a right to subscribe for fifty shares of the new stock. The market value of this privilege at that time is shown to have been $23 a share, making a total of $1,150. The trustee has charged himself with that sum.

The trustee's two statements, it will be observed, are absolutely irreconcilable. The first is, that in less than two years after he had assumed the duties of the trust, he had overpaid his *cestui que trust* $1,175, but had subsequently retained a sum, out of the dividends payable to his *cestui que trust*, sufficient to reduce this balance to $550 ; so that in 1869 his account showed a balance in his favor of only $550. The other is, that when the balance of $1,175 was struck in 1867, the trustee had not charged him-

self with the value of the stock privilege of 1866, and that subsequent to the time of striking such balance, the trustee made a further advance of $550 to his *cestui que trust*, so that the total sum due to him after such advance, leaving out of the account the value of the stock privilege, was $1,725; and that when he said the sum due to him had been reduced to $550, he did not mean that it had been reduced by dividends, which he had received and retained, but that it should be reduced by charging him with the value of the stock privilege of 1866. So that his present insistment is this : that no dividends, properly so called, were ever retained by him in payment of the balance due to him, but what he meant to describe by the word dividends, when testifying before the master, was the stock privilege. Hence, he says, in order to state his account correctly, he must, if he is charged with the value of the stock privilege, be also credited with the $1,175.

Now, as it seems to me, the account presented by the trustee and which he was attempting to elucidate when he gave his evidence before the master, shows almost conclusively that the theory upon which a change in the account is now asked, should not be adopted. The account was prepared from data furnished by the trustee. The debit side of it contains but four items, and the other only six. It will thus be seen that it was an affair of the simplest sort. The trustee had been a bank cashier and a broker. In his account he had charged himself with the value of the stock privilege of 1866, and leaves allowance for both the $1,175 and $550. When, therefore, he stated before the master that the balance struck in 1867 had been reduced by dividends retained, so that in 1869 it stood at $550, he knew he stood charged with the value of the stock privilege, and just how important an item of his account it constituted. In the face of this fact, it is difficult for me to see how the least credence can be given to the trustee's present claim.

But suppose it be conceded that the trustee is right in his present theory, can the court, in view of the facts, charge the *cestui que trust* with the balance struck in 1867? The book containing the account is lost. The *cestui que trust* has never

seen the account. The trustee does not seem to have looked at it since 1869, and he is scarcely able now to reproduce from memory a single item of it. Nobody knows what the items on either side of it are. Whether the trustee has charged himself with everything with which he is properly chargeable, and entered on the credit side nothing but what he is justly entitled to credit for, nobody can tell. In this position of affairs, to allow the credit claimed, the court must accept an arbitrary sum fixed by the trustee, in utter ignorance whether it is just or not, and without affording the *cestui que trust* the slightest opportunity either to investigate or dispute its correctness—such a thing, I venture to say, has never been done by any tribunal having the slightest acquaintance with the law defining the duties and obligations of trustees.

Trustees are bound to keep clear and accurate accounts, and in case doubts or obscurities arise from their failure to do so, they should be resolved against the trustees. If the accounts of a trustee become lost, through his carelessness, he should be required to bear any injurious consequences arising from their loss. The law imposes the duty of keeping accounts on trustees for the protection of their *cestuis que trust*, and a trustee will not be permitted to defeat this salutary purpose by his carelessness.

The persons seeking the aid of the court in this matter stand bound, as sureties, for the defaults and fraud of the trustee, and have no right, therefore, to any favor or immunity that would not be accorded to the trustee. The application must be denied, with costs.